# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 23-CR-160 (NEB/JFD) |
| Plaintiff, | |
| v. | ORDER ON REPORT AND RECOMMENDATION |
| JA'DARIUS WRIGHT (38), | |
| Defendant. | |

---

Over a decade ago, in *Riley v. California*, Chief Justice John Roberts described the unique significance of the modern cell phone to contemporary American life and to the investigation of criminal activity:

> Cell phones differ in both a quantitative and a qualitative sense from other objects that might be kept on [one's] person. The term "cell phone" is itself misleading shorthand; many of these devices are in fact minicomputers that also happen to have the capacity to be used as a telephone. They could just as easily be called cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers. . . .

> [Smartphone storage] translates to millions of pages of text, thousands of pictures, or hundreds of videos. . . . Cell phones couple that capacity with the ability to store many different types of information: Even the most basic phones that sell for less than $20 might hold photographs, picture messages, text messages, Internet browsing history, a calendar, a thousand-entry phone book, and so on. . . . We expect that the gulf between physical practicability and digital capacity will only continue to widen in the future.

573 U.S. 373, 393–394 (2014) (citing Orin Kerr, *Foreword: Accounting for Technological Change*, 36 Harv. J. L. & Pub. Pol'y 403, 404–05 (2013)).

Guided by the Supreme Court's reasoning in *Riley*, this Court now considers the Fourth Amendment's application to the warrantless seizure and search of Defendant Ja'darius Wright's cell phones. In doing so, the Court recognizes the special privacy and property interests implicated by the modern smartphone and the important law enforcement considerations at play.

Wright moves to suppress evidence obtained from two red iPhones (an iPhone 11 and an iPhone 13), which were seized from his person by investigators with the United States Drug Enforcement Administration ("DEA") at Minneapolis-St. Paul International Airport ("MSP Airport") on May 12, 2022. The DEA investigators had probable cause to believe that the iPhone 11 in Wright's possession contained evidence of criminal drug-trafficking activity.[1] As for the iPhone 13, the record indicates only that the iPhone 13 was in Wright's possession, and that investigators suspected that Wright was engaged in drug-trafficking activity. The iPhone seizures were not conducted incident to an arrest of Wright, and Wright did not consent to the seizures. The government has since stated that investigators could immediately distinguish between the two red iPhones at the time of the initial seizure.

---

[1] This Court previously concluded that the DEA investigators had probable cause to seize the iPhone associated with the 254-768-XXXX number from Wright as containing evidence of drug-trafficking activity (ECF No. 1583 at 15–16.) The parties have since confirmed in supplemental briefing that the iPhone 11 was the iPhone associated with the 254-768-XXXX number. (ECF No. 1621 at 2; ECF No. 1669 at 1.)

After the iPhones were initially seized from Wright, they were then each retained for another thirteen days, and then investigators applied for, and procured, a warrant to search them. Investigators were able to extract and search digital evidence from the iPhone 13, but lacked the technological capacity to do so for the iPhone 11. Investigators retained the iPhone 11 for another seven months until a software update enabled them to access the phone's data. After another month-and-a-half, investigators applied for, and obtained, a second warrant to search the iPhone 11 data.

For the reasons below, the Court concludes that the seizure of the iPhone 13 was constitutional. The Court also concludes that regardless of whether the prolonged seizure of the iPhone 11 was reasonable, the exclusion of evidence obtained from the iPhone 11 is unwarranted. Wright's motion to suppress (ECF No. 1036) is thus denied and the Report and Recommendations of United States Magistrate Judge John F. Docherty (ECF No. 1391 ("Docherty R&R")) and United States Magistrate Judge Douglas L. Micko (ECF No. 1393 ("Micko R&R")) are accepted to the extent that they were not already resolved by the Court in its December 3, 2024 Order ("Prior Order") (ECF No. 1583 at 39–40[2]).

---

[2] Unless otherwise noted, page numbers for documents filed with the Court through the CM/ECF electronic filing system reflect CM/ECF pagination. For documents provided conventionally to the Court, pagination reflects the pagination in the PDF file provided to the Court.

## BACKGROUND

### I.    Facts

On April 15, 2022, a search warrant was issued for pen register and trap and trace ("PRTT") information associated with phone number 254-768-XXXX.[3] (Gov't Ex. I-1.[4]) Pursuant to information derived from the PRTT search for 254-768-XXXX, investigators deduced that the phone associated with that number was in Minneapolis in early May 2022. (Gov't Ex. I-5 ¶ 18.) Specifically, investigators identified that the 254-768-XXXX phone was present at that time near the downtown Minneapolis Radisson Hotel. (*Id.*) Investigators then served an administrative subpoena on the Radisson Hotel, from which they learned that Wright checked in as a guest during the timespan that the 254-768-XXXX phone was in the geographic vicinity. (*Id.*)

After receiving that information, investigators learned that Wright had a ticket booked to travel on Sun Country Airlines on May 12, 2022, from MSP Airport to Phoenix Sky Harbor International Airport. (*Id.* ¶ 19.) In anticipation of Wright's travels, DEA investigators stationed themselves at MSP Airport on May 12, 2022. (*Id.*) At MSP Airport,

---

[3] The affidavit in support of the April 15, 2022 warrant conveyed that a call had been made from the 254-768-XXXX phone number to the United States Postal Inspector's Office asking about a parcel seized containing three kilograms of fentanyl. (Gov't Ex. I-1 at 4.)

[4] All Government Exhibits identified were produced conventionally with the Court at the pretrial motions hearings. (ECF No. 1192.)

a K-9 officer conducted open-air sniffs on Wright's two checked bags and on his carry-on bag. (*Id*.) The K-9 officer alerted for the presence of narcotics on all three bags.[5] (*Id*.)

The K-9 officer conducted the open-air sniff on Wright's carry-on bag while Wright was at the Sun Country Airlines gate. (*Id*.) At that same time, DEA investigators "made contact with" Wright and initiated conversation. (*Id*.) During that conversation, investigators placed a blocked call to the 254-768-XXXX phone number. (*Id*.) DEA Special Agent Matthew Cutcher observed Wright retrieve an iPhone from his front pants pocket—which was ringing on silent with a phone call from an unknown number— before he placed it back in his pocket. (*Id*.) Special Agent Cutcher then seized that iPhone and a second iPhone, which were each in Wright's front pants pocket. (*Id*.)

The seized iPhones were a red iPhone 11 and a red iPhone 13.[6] (Gov't Ex. I-6 ¶ 19.) The red iPhone 11 was linked to the 254-768-XXXX phone number. (ECF No. 1621 at 2; ECF No. 1669 at 1.[7]) Upon seizing both phones, Special Agent Cutcher determined that

---

[5] Even though no narcotics were found in any of Wright's three luggage parcels, $27,300 in United States currency was identified in the baggage. (Gov't Ex. I-5 ¶ 20.)

[6] In one document in the record, the second seized iPhone is identified as a red iPhone 12. (Gov't Ex. I-3 ¶ 28.) In supplemental briefing, Wright's counsel represented to the Court that it was his understanding that the second seized iPhone was indeed an iPhone 13, and that the reference to an iPhone 12 in Government Exhibit I-3 was "a typographical error." (ECF No. 1621 at 1 n.1.) The government did not object to that characterization. (ECF No. 1669.)

[7] As discussed below, the Court requested supplemental briefing from the parties to clarify this fact that was ambiguous in the record. The Court treats the undisputed representations made by the parties in the requested supplemental briefing as true.

the red iPhone 11—and not the red iPhone 13—was the phone associated with the 254-768-XXXX phone number. (*See* ECF No. 1669 at 2 ("Special Agent Cutcher saw an indication on the screen of the iPhone 11 that there was a missed call from a blocked caller and realized that the iPhone 11 was the phone [he] had just called.").) The iPhones were seized without a warrant and without Wright's consent. (ECF No. 1037 at 13; ECF No. 1239 at 18; ECF No. 1459 at 8.[8]) Wright was never arrested, and he was released by investigators to board the airplane for Phoenix. (ECF No. 1037 at 13; ECF No. 1239 at 18; ECF No. 1459 at 8.)

On May 25, 2022, Special Agent Cutcher applied for a warrant to search the iPhones, which was granted by United States Magistrate Judge Jon T. Huseby. (Gov't Ex. I-5 ("First Warrant").) In the supporting affidavit ("First Affidavit"), Special Agent Cutcher recited the above facts, including that the two iPhones were in Wright's same front pants pocket. (*Id*. ¶ 19; *see also id*. Attach. A.) The First Affidavit stated that based on Special Agent Cutcher's training and experience, "cell phones are tools of the drug trade," and that "[d]rug dealers often use multiple phones in an effort to thwart law enforcement." (*Id*. ¶ 24.)

The First Warrant was executed on June 1, 2022, and returned on July 20, 2022. (Gov't Ex. I-5 at 25.) The First Warrant Return noted that "only 1 of [the] cell phones had

---

[8] The government has never disputed Wright's characterization that he did not consent.

partial extraction of data download. The other phone was unable to extract data from [due] to [a] software update." (*Id*.) The iPhone 11 was the device from which investigators could not obtain digital evidence. (Gov't Ex. I-6.)

Months later, on January 6, 2023, the DEA Digital Evidence Laboratory obtained the technological capacity to decrypt the iPhone 11 "due to a software update," and investigators then retrieved the data from the phone. (*Id*. ¶ 24.) Special Agent Cutcher received the extracted iPhone 11 data on February 13, 2023. (*Id*. ¶ 25.) Special Agent Cutcher then applied for another search warrant to search the iPhone 11 data on February 24, 2023, attesting to these facts in an affidavit ("Second Affidavit"). (*Id*. ¶¶ 24–25.) United States Magistrate Judge Elizabeth Cowan Wright granted the search warrant ("Second Warrant"). (*Id*.) There is nothing in the record to suggest that at any point between when the iPhones were seized and when the Second Warrant was issued that Wright ever requested for his iPhones to be returned. (ECF No. 1621 at 3; ECF No. 1669 at 2.)

Using evidence obtained from the search of the iPhone 11 data, investigators established probable cause for another warrant (issued March 17, 2023) to search data contained in the "RICHOFFSOLES" Snapchat account. (Gov't Ex. I-3 ¶¶ 30–34.) And evidence obtained from the search of the "RICHOFFSOLES" Snapchat account was used in a separate affidavit to establish probable cause for the issuance of a warrant for the PRTT search of a 254-548-XXXX phone number, on May 10, 2023. (Gov't Ex. I-4 at 3.)

## II.    Procedural Background

Wright was charged in a forty-defendant indictment with conspiracy to distribute controlled substances, distribution of a controlled substance, and possession with intent to distribute a controlled substance. (ECF No. 1708 at 38–39, 44–45.) Wright moved to suppress evidence obtained by the government. (ECF No. 1036.) In relevant part,[9] Wright moved to suppress: (1) evidence obtained from searches of two cell phones seized at MSP Airport on May 12, 2022; (2) evidence discovered as a result of the Snapchat "RICHOFFSOLES" warrant; and (3) information obtained from the PRTT search of the 254-548-XXXX phone number, pursuant to the warrant issued on May 10, 2023.[10] (*Id*. at 1–2.)

Judge Docherty heard oral argument on Wright's motions on June 25, 2024. (ECF No. 1187.) At the hearing, counsel for the government stated that "the [g]overnment is

---

[9] Wright separately also moved to suppress: (1) information obtained from the PRTT search of the 254-768-XXXX phone number, pursuant to the warrant issued on April 15, 2022; (2) information law enforcement obtained from an administrative subpoena served on the downtown Minneapolis Radisson Hotel on May 11, 2022; and (3) evidence obtained from searches of three pieces of luggage seized at MSP Airport on May 12, 2022. (ECF No. 1036 at 1; *see also* ECF No. 1037 at 5–13.) The Court previously denied Wright's motion to suppress as to these items of evidence. (Prior Order at 39.)

[10] Wright's initial motion identified its objection to a PRTT search conducted pursuant to a warrant issued on May 10, 2022. (ECF No. 1036 at 1; *see also* ECF No. 1037 at 5.) But Wright's later briefings indicate this was likely a typographical error, and that the challenge was to the search conducted pursuant to the warrant issued on May 10, 2023. (ECF No. 1239 at 11.) The Docherty R&R treated Wright's motion as challenging the search pursuant to the May 10, 2023 warrant. (Docherty R&R at 47, 49–51.)

comfortable going forward and meeting its burden by using the information in those warrants [that were included in the government's exhibits provided conventionally to the Court] to show that the seizure of the phones is appropriate." (ECF No. 1218 at 77:10–12.) Counsel for the government further represented that "[w]e understand the risk that we're taking that the Court may find that we didn't meet our burden." (*Id*. at 78:2–4.)

Following the hearing, Judge Docherty issued a Report and Recommendation denying Wright's motion to suppress, in relevant part, as to evidence obtained from the searches of the two cell phones seized at MSP Airport on May 12, 2022, and as to evidence obtained from the PRTT search of the 254-548-XXXX phone number, pursuant to the May 10, 2023, warrant. (Docherty R&R at 49–51, 53–54.) Judge Micko separately issued a Report and Recommendation denying Wright's motion to suppress as to evidence obtained from searching the "RICHOFFSOLES" Snapchat account.[11] (Micko R&R at 4–8.)

Wright objected to the recommendations in the Docherty R&R and the Micko R&R. (ECF No. 1459.) In response to Wright's objections, the Court conducted a de novo review, and issued the Prior Order. The Prior Order accepted the Docherty R&R and the Micko R&R, except that the Court kept under advisement Wright's motion as to: (1)

---

[11] Judge Micko reviewed this part of Wright's motion "[a]s a courtesy to Mr. Wright to ensure this particular warrant is reviewed by a second detached Magistrate Judge," because Judge Docherty was the Magistrate Judge who signed the warrant for the search of the "RICHOFFSOLES" Snapchat account. (Micko R&R at 1; *see also* Docherty R&R at 47 n.12; Gov't Ex. I-3.)

evidence obtained from the two cell phones seized at MSP Airport on May 12, 2022,[12] (2)

evidence discovered as a result of the Snapchat "RICHOFFSOLES" warrant; and (3)

information obtained from the PRTT search of the 254-548-XXXX phone number.[13] (Prior

Order at 40.)

The Court also requested supplemental briefing from the parties to address four

legal questions and three factual questions that were unclear from the record.[14] (*Id*. at 16–

---

[12] The Court did accept the Docherty R&R to the extent that it determined that investigators had probable cause to initially seize the iPhone 11 associated with the 254-768-XXXX phone number at MSP Airport. (Prior Order at 15–16.)

[13] As for evidence discovered as a result of the Snapchat "RICHOFFSOLES" warrant and the May 10, 2023, PRTT search warrant of the 254-548-XXXX phone number, the Court accepted in its Prior Order the recommendations of the Micko R&R and the Docherty R&R finding these searches to be substantively reasonable. (Prior Order at 16 n. 20 (citing Micko R&R at 4–7; Docherty R&R at 49–51).) But the Court left open whether the fruit-of-the-poisonous tree doctrine may apply to exclude such evidence as derivative from the search of the iPhone 11. (*Id*.; *see also id*. at 39–40 ¶ 3.)

[14] The legal questions the Court requested supplemental briefing on were:
    (1) Was the initial seizure of the red iPhone not associated with the 254-768-XXXX phone number constitutional?
    (2) Was the continued seizure of both iPhones for thirteen days before securing the First Warrant constitutional?
    (3) Was the continued seizure of the iPhone 11 until the issuance of the Second Warrant in early 2023 constitutional?
    (4) Is the suppression of evidence obtained from the phones an appropriate remedy for any constitutional seizure issue here?
The factual questions the Court requested supplemental briefing on were:
    (1) Which red iPhone—the iPhone 11 or the iPhone 13—was associated with the 254-768-XXXX phone number?
    (2) When, if ever, were investigators aware of which iPhone was associated with the 254-768-XXXX phone number?

17.) The Parties then filed the requested supplemental briefing. (ECF Nos. 1621, 1669.) In Wright's supplemental briefing, he appeared to object to the Court's consideration of the additional factual record presented through supplemental briefing, because the government knowingly declined to supplement the record at oral argument before Judge Docherty. (ECF No. 1621 at 2.) The Court understands Wright's concerns, but the Court notes that the three supplemented facts are at worst neutral, if not favorable, to Wright. Thus, the Court treats as true: (1) that the iPhone 11 is the phone associated with the 254-768-XXXX phone number; (2) that Special Agent Cutcher could distinguish between the iPhone 11 and iPhone 13 at the time of seizure, and knew that the iPhone 11 was the phone associated with the 254-768-XXXX number; and (3) that nothing in the record suggests that Wright ever requested the return of his iPhones once they were seized.[15]

## ANALYSIS

The Court has reviewed the Docherty R&R and the Micko R&R de novo. *See* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3); D. Minn. L.R. 72.2(a)(3), (b)(3). In conducting this de novo review, the Court "may accept, reject, or modify, in whole or in part, the

---

(3) Did Wright ever request that his iPhones be returned after the initial seizure?

(Prior Order at 16–17.)

[15] As for the third point, the Court will not adopt the government's characterization of the facts that "Wright never requested that his iPhones be returned after the initial seizure." (ECF No. 1669 at 2.) Rather, the Court merely accepts that there are no facts before the Court that Wright ever requested the return of the iPhones.

findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The Court now addresses Wright's motion to suppress each iPhone separately, beginning with the red iPhone 13.

## I.    Initial Warrantless Seizure of the iPhone 13

Although the Court previously concluded that DEA investigators had probable cause to seize the iPhone 11 from Wright (*see* Prior Order at 15–16), the Court left open whether investigators constitutionally seized the iPhone 13. Because the iPhone 13 was seized without a warrant, the reasonableness of the seizure turns on whether an exception to the Fourth Amendment's warrant requirement applies.

Wright argues that the warrantless seizure of the iPhone 13 "was a fishing expedition," and that "no valid exception to the warrant requirement" applies. (ECF No. 1621 at 3 (citing *United States v. Edwards*, 415 U.S. 800 (1974)).) Wright's argument rests on the premise that even if investigators had probable cause to believe that the iPhone 11 contained evidence of criminal activity, they had no similar probable cause as to the iPhone 13.[16]

For its part, the government argues that DEA investigators had probable cause to believe that criminal drug-trafficking activity was contained in the iPhone 13 (as well as on the iPhone 11), and so a warrantless seizure was justified to prevent the destruction of

---

[16] Wright never disputes that assuming officers had probable cause to seize the phones as containing evidence of criminal activity, that exigent circumstances existed. (*See* ECF No. 1037 at 13–15; ECF No. 1239 at 17–20; ECF No. 1459 at 7–8.)

evidence while the government sought a warrant to search the device.[17] (ECF No. 1669 at

2–3.) The government's argument turns on whether Special Agent Cutcher's attestations

that "cell phones are tools of the drug trade," and that "[d]rug dealers often use multiple

phones in an effort to thwart law enforcement" (Gov't Ex. I-5 ¶ 24) were sufficient to

establish probable cause to believe that the iPhone 13 contained evidence of criminal

activity, when considered alongside all else investigators knew about Wright.[18]

    The government's argument implicates the exigent-circumstances exception to the

warrant requirement. *United States v. Shrum*, 59 F.4th 968, 972 (8th Cir. 2023). For this

---

[17] The Court's analysis proceeds on the inference that the iPhone 13 was in Special Agent Cutcher's plain view or plain touch at the time he seized the iPhone 11. Although neither the First Affidavit nor the Second Affidavit explicitly articulate whether the iPhone 13 was in Special Agent Cutcher's plain view or plain touch at the time he seized the iPhone 11, they do establish that the iPhone 13—like the iPhone 11—was in Wright's front pants pocket. (Gov't Ex. I-5 ¶ 19 (stating that it was in the "same" front pants pocket); Gov't Ex. I-6 ¶ 19 (omitting that it was in the "same" front pants pocket).) While Wright did argue in the underlying briefings before Judge Docherty that "[t]he other [iPhone 13] was not in plain view," the nature of his arguments were that the incriminating character of the iPhone 13 was not in plain view. (ECF No. 1239 at 18–20; *see also* ECF No. 1037 at 14.) Wright never argued that the iPhone 13 *as a physical object* was out of the plain sight or plain touch of investigators. Given the facts described in the First Affidavit and the fact that Wright raised no specific argument about whether Special Agent Cutcher could see or feel the iPhone 13 as an object, the Court reasonably infers that the iPhone 13 was in Special Agent Cutcher's plain view or plain touch at the time he seized the iPhone 11.

[18] The government raised an alternative argument in its briefing on the underlying motion that the incident-to-arrest exception to the warrant requirement applies to the seizure of the iPhone 13 (even though Wright was never arrested). (ECF No. 1340 at 53 (citing *Cupp v. Murphy*, 412 U.S. 291, 293–96 (1973) and *United States v. Lester*, 647 F.2d 869, 873 n.7 (8th Cir. 1981)).) Because the Court concludes that there was probable cause for the government to seize the iPhone 13 to prevent the destruction of evidence, the Court does not address whether the incident-to-arrest exception to the warrant requirement applies.

exception to apply: (1) there must be probable cause that the item to be seized is contraband or contains evidence of a crime, and (2) exigent circumstances must exist to justify the item's immediate seizure, such as an officer's reasonable belief that evidence may be imminently destroyed. *Id.*

### A. Probable Cause

The Court first concludes that the incriminating character of the iPhone 13 was readily apparent to investigators at the time the device was seized, and thus there was "a fair probability that contraband or evidence of a crime [would] be found" on the phone. *Id.* (citation omitted).

The First Affidavit attests that "cell phones are tools of the drug trade," and that "[d]rug dealers often use multiple phones in an effort to thwart law enforcement." (Gov't Ex. I-5 ¶ 24.) These general propositions are each supported by Eighth Circuit case law. *See United States v. Eggerson*, 999 F.3d 1121, 1125 (8th Cir. 2021) (considering cell phones to be "tools of the drug trade" (cleaned up and citation omitted)); *United States v. Burris*, 22 F.4th 781, 785 (8th Cir. 2022) ("[T]raffickers often use multiple phones to avoid detection and to compartmentalize different points of contact in the drug dealing business"); *United States v. Hernandez-Mendoza*, 600 F.3d 971, 977 (8th Cir. 2010) (crediting circumstantial evidence that "drug traffickers typically carry multiple cell phones to allow for the disposal of one or more, if necessary to avoid detection").

In addition to these general propositions, facts known to Special Agent Cutcher at the time of seizure provided him with an ample basis to believe that there was probable cause that Wright was engaged in drug trafficking activity, and that evidence of such activity was contained on *both* phones.[19] First, investigators had probable cause to believe that the iPhone 11, which was in Wright's possession along with the iPhone 13, was used to contact the United States Postal Inspector's Office to ask about a seized parcel containing three kilograms of fentanyl shipped from Arizona to Minnesota. (Gov't Ex. I-5 ¶¶ 7, 19.) Second, investigators knew that Wright listed his home address on his driver's license as being in Avondale, Arizona—the same city of residence as the T-Mobile

---

[19] The Court reaches this conclusion even after accounting for the omissions from the First Affidavit that Special Agent Cutcher could distinguish between the iPhone 11 and the iPhone 13 and that he could immediately tell that the iPhone 11 was the device linked to the 254-768-XXXX phone number. (ECF No. 1669 at 1–2.) In other words, the Court determines probable cause exists regardless of the implied indistinguishability in appearance of the iPhone 11 and the iPhone 13 as described in the First Affidavit. So even though Wright requested a hearing under *Franks v. Delaware* on the omissions from the First Affidavit (*see* ECF No. 1037 at 14), no such hearing is required. *See* 438 U.S. 154, 171–172 (1978) ("[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required."). The Eighth Circuit's recent ruling in *United States v. Kucharo*, __ F.4th __, 2025 WL 454769, at *4 (8th Cir. Feb. 11, 2025) is instructive. In that case, the Eighth Circuit stated that "even if [the officer's] statement was false or misleading, [the defendant] failed to establish a *Franks* violation because the unchallenged statements in [the officer's] affidavit establish 'a fair probability' that evidence . . . would be found in [the defendant's] van." *Id*. (listing six different unchallenged grounds upon which the issuing Magistrate Judge could rely in reaching a probable cause determination).

subscriber of the iPhone 11.[20] (*Id*. ¶¶ 8, 18.) Third, investigators knew that Wright had traveled to stay at the Radisson Hotel in downtown Minneapolis, and that his visit corresponded to when the iPhone 11 was also in the same location. (*Id*. ¶ 18.) Fourth, investigators knew that the iPhone 11 "was located in the State of Arizona a majority of the time," which is Wright's state of residence. (*Id*.) Fifth, a K-9 officer positively alerted for the presence of narcotics on both of Wright's items of checked baggage and on Wright's carry-on bag.[21] (*Id*. ¶ 19) Finally, Special Agent Cutcher attested that "[g]iven the size and nature of [Wright and his co-conspirators'] drug operation," that he "believe[d] that [Wright and his co-conspirators] most certainly used cellular telephones in order to facilitate their illegal drug trafficking." (*Id.* ¶ 24.)

### B. Exigent Circumstances

The Court next concludes that a reasonable officer would believe that Wright might "imminently destroy evidence." *Shrum*, 59 F.4th at 972 (citation omitted). "Under the circumstances, and knowing how easily evidence could be deleted from a cell phone, it was objectively reasonable for [Special Agent Cutcher] to be concerned that [Wright] could destroy the evidence" on the phones. *United States v. Evans*, No. 1:23CR00117 AGF,

---

[20] In the Second Affidavit, it is further stated that Wright's driver's license listed the same street as the address of the T-Mobile subscriber of the iPhone 11. (Ex. I-6 ¶ 17.)

[21] Wright's luggage was not searched until after the seizure of the iPhone 13 when investigators obtained a signed search warrant. (Gov't Ex I-5 ¶ 19.) When investigators later searched the bags, they found $27,300 in cash, but no narcotics. (*Id*. ¶ 20.)

2024 WL 5232987, at *4 (E.D. Mo. Dec. 27, 2024) (upholding the warrantless seizure of a cell phone that officers had probable cause to believe contained evidence of criminal activity). It is true that "evidence . . . stored on an electronic device does not itself constitute exigent circumstances." *Shrum*, 59 F.4th at 973. But, here, Wright not only knew that law enforcement was closing in on him as a suspect after they confronted him that the K-9 officer had alerted to the presence of narcotics in his carry-on bag, but Wright also knew their suspicion was at least partially tied to his digital trail, given that investigators wanted his iPhone 11 after watching him ignore a blocked call. (Gov't Ex. I-5 ¶ 19; *see also* Gov't Ex. I-7 at 2–3.) That Wright was stopped just before boarding a flight would also suggest to him that he was being singled out, and that the stop was not random.

A reasonable officer would worry that if a suspect in Wright's position was allowed to retain their cell phones, they would imminently delete incriminating information including text messages, photographs, and audio files. *See United States v. Mays*, 993 F.3d 607, 614–16 (8th Cir. 2021) (reasoning that officers had probable cause to warrantlessly seize a laptop because officers learned that the [seized] "laptop likely was used to further [the defendant's] scheme and that evidence of that scheme may be on the laptop," and "investigators risked losing digital evidence on the laptop without immediate seizure" (citation and quotation marks omitted)); *see also United States v. Babcock*, 924 F.3d 1180, 1194–95 (11th Cir. 2019) ("[I]t was reasonable for the officers here to conclude that [the defendant] had the ability and incentive to, after learning of the

17

investigation into his [criminal activity,] destroy damning information contained on his phone. That's all the exigent circumstances doctrine requires." (citation and quotation marks omitted)).

In sum, the Court concludes that Special Agent Cutcher had probable cause to believe that evidence of drug trafficking activity would be contained on the iPhone 13 (as well as on the iPhone 11), and it was reasonable for Special Agent Cutcher to seize the phones without a warrant to prevent the imminent destruction of evidence.

**C. Persuasive Authority**

This conclusion aligns with persuasive authority from other jurisdictions, which suggests that a drug-trafficking suspect's possession of multiple cellular devices can be considered under the totality of the circumstances to justify their warrantless seizure when a suspect is subject to an investigatory stop. *See United States v. Conley*, 342 F. Supp. 3d 247, 265–67 (D. Conn. 2018); *United States v. Batista*, No. 23-6204, 2024 WL 5053262, at *4 (10th Cir. Dec. 10, 2024).

In *Conley*, the District of Connecticut denied a motion to suppress evidence obtained from a cell phone, which was originally seized without a warrant from the defendant's vehicle during a traffic stop. 342 F. Supp. 3d at 267. In that case, before the defendant was stopped, he was seen engaging in hand-to-hand drug transactions, driving evasively, and matched the description of the drug trafficking suspect. *Id*. Once officers stopped the defendant's vehicle and secured the defendant outside the vehicle,

officers noticed three cell phones located inside the driver's door pocket. *Id*. at 258. At that point, the officers dialed a phone number they knew to be linked to suspected drug-trafficking activities, and one of the cell phones rang. *Id*. The officers then seized that cell phone, as well as the two other phones present along with it in the driver's door pocket. *Id*. The defendant then challenged the constitutionality of the seizure of one of the other two cell phones taken from the door pocket.[22] *Id*. at 266.

The *Conley* court acknowledged that it was "a closer call," but ultimately concluded that the seizure of the other cell phone in the driver's door pocket was constitutional, because "the Government presented evidence *beyond possession of three cell phones*." *Id*. (emphasis added). The *Conley* court opined that "a person's mere ownership or possession of multiple cell phones does not give law enforcement probable cause to seize property." *Id*. But given the totality of the circumstances of what officers knew about the defendant (including that he been witnessed engaging in drug transactions, seen driving evasively, matched the description of the suspect, and had possession of the other phone known to relate to drug-trafficking activity), the *Conley* court determined that there was probable cause to seize the other phone. *Id*. at 266–67.

Similarly, in *Batista*, the Tenth Circuit upheld the district court's denial of the defendant's motion to suppress the warrantless seizure of two phones from the

---

[22] The *Conley* court did not address the seizure of the other additional cell phone because the government never searched that phone. 342 F. Supp. 3d at 273 n.4.

defendant's person during a traffic stop. 2024 WL 5053262, at *4. The DEA agents in that case did not have probable cause to know that either of the two cell phones were linked to a phone number tied to drug trafficking activity (unlike in *Conley* and in this case). But the DEA agents did have probable cause that the defendant was engaged in drug-trafficking activity. *Id*. Among other facts, the DEA agents knew that documents identifying the defendant were found in a methamphetamine conversion lab, that the defendant was witnessed engaging in an apparent drug transaction, and that the defendant had a drug-related felony conviction. *Id*. And after the defendant was given *Miranda* warnings during the stop, the defendant "referenced information that could reasonably be expected to be found on those [two cell] phones." *Id*. Thus, the *Batista* court determined that "the totality of the circumstances rendered it objectively reasonable for an officer . . . to believe that [the defendant's] cell phones contained incriminating evidence, thereby justifying the warrantless seizure." *Id*. And so the *Batista* court was "persuaded that the warrantless seizure was permissible to prevent the deletion of incriminating evidence that the officer had probable cause to believe existed on the cell phone." *Id*. (citation and quotation marks omitted).

Finally, the Court cautions that its opinion is narrow and limited to the facts here. Just because a drug-trafficking suspect may have two phones on their person and the government knows that evidence of criminal activity is likely to be found on one of them

does not automatically render the seizure of both phones reasonable.[23] The fact that a suspect possesses two phones (including one believed to contain evidence of criminal activity) is to be considered alongside other information known to officers at the time of the seizure in determining the reasonableness of the seizure. In this case, the warrantless seizure of the iPhone 13 was reasonable because investigators had probable cause to believe that the iPhone 13 (in addition to the iPhone 11) contained evidence of criminal activity, which could have been imminently destroyed if the phone was not seized.

## II.    Continued Warrantless Seizure of the iPhones for Thirteen Days

Next, the continued seizure of both the iPhone 11 and the iPhone 13 did not become unreasonable over the course of the thirteen-day period when investigators failed to apply for a warrant. *See Segura v. United States*, 468 U.S. 796, 812 (1984) ("Of course, a seizure reasonable at its inception because [it is] based upon probable cause may become unreasonable as a result of its duration.").

---

[23] Indeed, it is not unusual in contemporary American life for individuals to carry two cell phones on their person—a personal phone used for engaging with friends and family, maintaining personal records, and documenting life's intimate moments, and a work phone used for business affairs. *See* Steelcase, Inc./Ipsos, *360° Steelcase Global Report—Engagement and the Global Workplace: Key Findings to Amplify the Performance of People, Teams and Organizations*, at 29 (2016) (noting that 26 percent of American workers had employer-provided mobile phones in 2016); *see also Batista*, 2024 WL 5053262, at *4 (emphasizing that the defendant was in possession of two cell phones "despite not having any legitimate employment"); *cf. Burris*, 22 F.4th at 785 (considering the defendant's possession of *seven* cell phones to, itself, have "independent evidentiary value" to support suspicion of drug-trafficking activity).

The reasonableness of the duration of a warrantless seizure is "measured in objective terms by examining the totality of the circumstances." *Mays*, 993 F.3d at 616 (citation omitted). Because the analysis is contextual, "a delay as short as 90 minutes may be unreasonable, while in other contexts, a delay of over three months may be reasonable." *Id.* at 617 (citation and quotation marks omitted). The analysis requires balancing an individual's privacy and possessory interests against law enforcement interests. *Id.* at 617.

> On the private-interests side, relevant considerations include the significance of the interference with the person's possessory interest, the duration of the delay, whether the person consented to the seizure, and the nature of the seized property. On the government-interests side, relevant considerations include the government's legitimate interest in holding the property as evidence, the nature and complexity of the investigation, the quality of the warrant application and the amount of time we expect the application would take to prepare, and any other evidence proving or disproving law enforcement's diligence in obtaining the warrant.

*Id.* (citations omitted) These factors are non-exhaustive, but are considered to be the "most relevant." *Id.*

As for private interests, the significant possessory interest that a person has in their cell phone (and its internal contents) is beyond debate. As the Supreme Court noted over a decade ago, the modern smartphone is more than just a telephone; it is a "camera, video player, rolodex, calendar, tape recorder, library, diary, album, television, map, [and] newspaper." *Riley*, 573 U.S. at 393 (cleaned up); *see also Robbins v. City of Des Moines*, 984 F.3d 673, 681 (8th Cir. 2021) ("Given the nature and prevalence of cell phones in our

society, . . . it's no stretch to hazard that a modern-day traveler would likely rather arrive in a strange place without her luggage than without her phone." (citation and quotation marks omitted)). A cell phone may contain an individual's most important and intimate records—whether they be communications, photographs, or financial documents. Wright had the phones seized from him, without his consent, for almost two weeks before investigators obtained a warrant. Thus, Wright's interest in the phones was significant—even though the record does not indicate that Wright ever requested their return. (ECF No. 1621 at 3; ECF No. 1669 at 2.)

Against this significant private interest is a similarly strong law enforcement interest. Because the phones were seized based on the investigators' probable cause belief that they each contained evidence of criminal drug-trafficking activity, the government's legitimate interest in holding the property without a warrant is significant. In addition, the complexity of this drug-trafficking investigation and the time needed to diligently investigate Wright's connection to the case[24] also each weigh in favor of the reasonableness of the continued seizure.

The Court considers *Mays*—in which the Eighth Circuit upheld the government's fifteen-day delay in obtaining a warrant to search a seized laptop—to be instructive. *See*

---

[24] Wright does not appear to have been on the radar of law enforcement in this investigation until some point after the administrative subpoena was executed from the downtown Minneapolis Radisson Hotel, which listed Wright as a guest during the time that the iPhone 11 had been in the geographic vicinity. (Gov't Ex. I-5 ¶ 18.) Until that point, investigators appear to have been pursuing different suspects. (*Id*. ¶¶ 7–17.)

993 F.3d at 617–18. In that case, the government had probable cause for believing that the defendant's seized laptop contained evidence of criminal activity. *Id*. at 617. And the affidavit in support of the warrant included detailed information about the multiple agency investigation, which explained the government's diligence. *Id*. at 618. And so, even though the Eighth Circuit credited the defendant's significant private interest in his laptop, it ultimately held that the fifteen-day warrantless seizure was reasonable. *Id*.

Likewise, here, even accepting Wright's strong private interest, the fact remains that the government had probable cause to believe that both of the phones contained evidence of criminal activity and the record does not indicate that the government acted without reasonable diligence in pursuing a warrant under the circumstances of a complex investigation involving multiple states and multiple suspects. *Cf. United States v. Waldrip*, No. 4:18-CR-00163-RGE-CFB-2, 2019 WL 13143479, at *7 (S.D. Iowa Apr. 3, 2019) (finding a five-day warrantless seizure to be unreasonable where the government's interest in seizing the defendant's phone was "weak," because (1) the officers did not have probable cause that the phone contained evidence of a crime and (2) an officer provided testimony that did not suggest that officers "diligently pursue[d] their investigation" (citing *United States v. Place*, 462 U.S. 696, 709 (1983))). Thus, the Court concludes that the continued warrantless seizure of the iPhone 11 and the iPhone 13 for thirteen days before obtaining the First Warrant was reasonable under the totality of the circumstances.

### III.    Continued Seizure of the iPhone 11 After the First Warrant

After investigators obtained the First Warrant and could not access the data stored on the iPhone 11, investigators retained the phone for another eight months before applying for the Second Warrant to search its data once they had the technological ability to do so. Wright argues that this continued seizure of the iPhone 11 for months after the First Warrant was issued rendered the seizure unreasonable. (ECF No. 1459 at 9 ("To hold otherwise would be [to] allow the government to seize electronic devices and hold them indefinitely until technology advanced in a way to permit [the] search [of] it.").)

The Court acknowledges the persuasiveness of Wright's argument—there must be *some limit* defining when the government can no longer retain property that contains evidence of a crime (but is not itself evidence) after obtaining a warrant. But the Court need not determine what that limit is here,[25] because even if the prolonged seizure after the issuance of the First Warrant was unreasonable, the exclusionary rule does not apply.

---

[25] In *United States v. Metter*, the Eastern District of New York considered the "interesting issue of first impression" of "[h]ow long may the government retain seized and imaged electronic evidence before conducting a review of that evidence." 860 F. Supp. 2d 205, 212 (E.D.N.Y. 2012) (determining that "the government's more than fifteen-month delay in reviewing the seized electronic evidence, under the facts and circumstances of this case, constitutes an unreasonable seizure"). Relying on *Metter*, the Western District of New York recently found reasonable an almost six-month delay in completing the search of a seized phone while officers waited for the development of "special decryption software, which was not available at the time the phones were seized." *United States v. Washington*, No. 23-CR-6109, 2024 WL 4750372, at *4 (W.D.N.Y. Nov. 12, 2024). The *Washington* court considered it to be significant that the government started "its attempts to access the cell phones within two days of them being seized." *Id*. Thus, the court concluded that the government's inability to complete the search for months until the software was available

Assuming that the prolonged seizure of the iPhone 11 for eight months after the First Warrant was issued was unreasonable, the exclusionary rule does not apply because investigators acted in good faith reliance on the Second Warrant when they searched it.[26] *See United States v. Leon*, 468 U.S. 897, 920 (1984). In the Second Affidavit, Special Agent Cutcher provided Judge Wright with all the relevant information to consider, including:

(1) the iPhone 11 was initially seized on May 12, 2022;

(2) the First Warrant was issued to search the device on May 25, 2022;

(3) the DEA Digital Evidence Laboratory determined that the iPhone 11 could not be decrypted after receiving the device in June 2022;

(4) investigators returned the First Warrant on July 20, 2022, and told the Magistrate Judge of their intent to "reapply for a search warrant for the red Apple iPhone 11 once the technology allowed for the extraction of the data;"

(5) the DEA Digital Evidence Laboratory was able to decrypt the iPhone 11 on January 6, 2023 "due to a software update;"

(6) the iPhone 11 and its data were in "continuous law enforcement custody" since May 12, 2022;

(7) the data was received by Special Agent Cutcher from the DEA Digital Evidence Laboratory on February 13, 2023.

---

was different from the situation in *Metter* where the government did not even begin to try searching the data for fifteen months. *Id.*

[26] None of the exceptions to the *Leon* good-faith exception to the exclusionary rule apply here. *United States v. Ortiz-Cervantes*, 868 F.3d 695, 702–03 (8th Cir. 2017) (listing *Leon* exceptions). First, the Second Affidavit did not include a false statement or material omission made intentionally or with reckless disregard for the truth to mislead Judge Wright that there was probable cause to search the iPhone 11. Second, Judge Wright did not wholly abandon the judicial role in issuing the Second Warrant. Third, the Second Warrant was not so lacking in indica of probable cause as to render official belief in it entirely unreasonable. And fourth, the Second Warrant was not so facially deficient that no police officer could reasonably presume it to be valid.

(Gov't Ex. I-6 ¶¶ 18–19, 21–25.) With all of this information, Judge Wright issued the Second Warrant on February 24, 2023. (*Id*. at 1.) Thus, it was reasonable for investigators to rely in good faith on the Second Warrant in searching the iPhone 11 and its data.

Wright disagrees, arguing that the *Leon* good faith doctrine does not apply to a search done pursuant to a warrant that was issued after a seizure was rendered unconstitutional by a months-long law enforcement delay. (ECF No. 1621 at 6 (citing *United States v. Fife*, 356 F. Supp. 3d 790, 806 (N.D. Iowa 2019).) But *Fife* is distinguishable. First, in *Fife*, there never was a first search warrant that justified the initial seizure of the device, while in this case the prolonged seizure took place after the First Warrant had already been issued, which was discussed in the Second Affidavit.[27] *Compare id*. at 796 (discussing how the government in that case delayed six months in obtaining a warrant after receiving material obtained from a private search) *with* (Gov't Ex. I-6 ¶¶ 21–25)). Second, the *Fife* court emphasized that the warrant did "not reflect a 'detached and neutral' determination on the reasonableness of the six-month delay, especially because it is unclear from the affidavit in support of the search warrant how long the hard drive had been in police custody." 356 F. Supp. 3d at 807. By contrast, the Second Affidavit

---

[27] Wright also cites in his underlying briefing to *United States v. Escobar*, No. 15-CR-260 (PAM/TNL), 2016 WL 3676176, at *5 (D. Minn. July 7, 2016) for the proposition that an eighth month warrantless seizure of a cell phone is unconstitutional, and that a subsequent search cannot be cleansed by the issuance of a warrant. (ECF No. 1239 at 21–23.) But just like *Fife*, *Escobar* differs in the critical respect that there never was an initial search warrant before the months-long delay in procuring the operative warrant. *See* 2016 WL 3676176, at *4–5.

described the chain of custody of the iPhone 11 over the months-long delay, and explained why law enforcement continued to seize the phone without searching it after the First Warrant was issued. (Gov't Ex. I-6 ¶¶ 21–25.) Judge Wright presumably factored all this into her probable cause analysis. And so, it was reasonable for officers to rely in good faith on the Second Warrant as reflecting a neutral and detached determination on the reasonableness of the delay in searching the phone.

Wright's motion to suppress evidence obtained from the search of the iPhone 11 is thus denied. Necessarily, this means that the fruit-of-the-poisonous-tree doctrine also does not apply to evidence deriving from the iPhone 11 search, which was later obtained pursuant to the Snapchat "RICHOFFSOLES" warrant or pursuant to the May 10, 2023 PRTT search warrant of the 254-548-XXXX phone number.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1.  The portion of the Report and Recommendation of United States Magistrate Judge John F. Docherty (ECF No. 1391) that remained under advisement pursuant to the Court's December 3, 2024 Consolidated Order (ECF No. 1583) is ACCEPTED;

2.  The portion of the Report and Recommendation of United States Magistrate Judge Douglas L. Micko (ECF No. 1393) that remained under advisement

pursuant to the Court's December 3, 2024 Consolidated Order (ECF No. 1583) is ACCEPTED; and

3.    Ja'darius Wright's Motion to Suppress Evidence Obtained by Search and Seizure (ECF No. 1036) is DENIED as to (1) evidence obtained from the search of the iPhone 13 seized at MSP Airport on May 12, 2022; (2) evidence obtained from the search of the iPhone 11 seized at MSP Airport on May 12, 2022; (3) evidence discovered as a result of the Snapchat "RICHOFFSOLES" warrant; and (4) information obtained from the electronic surveillance of devices allegedly owned or possessed by Wright, pursuant to the warrant issued on May 10, 2023.

Dated: February 25, 2025                        BY THE COURT:

                                                s/Nancy E. Brasel
                                                Nancy E. Brasel
                                                United States District Judge